# CHARLESTON.

## HARMON *v.* STEELE & STEPHENSON.

Submitted February 22, 1910.    Decided December 13, 1910.

APPEAL AND ERROR—*Review—Conflicting Evidence.*

> The verdict of a jury found on conflicting oral evidence alone will not be set aside and a new trial awarded the losing party, unless the evidence be so preponderating in his favor as to show bias, prejudice, corruption or undue influence on the part of the jury.

Error to Circuit Court, Cabell County.

Action by Daniel Harmon against Steele & Stephenson. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Blackwood & Saunders* and *H. C. McWhorter,* for plaintiffs in error.

*Lilly & Shrewsbury,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued defendant in *assumpsit,* the declaration containing the common counts and a special count, alleging in the special count that he had been prevented by the action of defendants from completing a logging contract, and damages sustained thereby. In his bill of particulars plaintiff charged defendants as follows: To 170,000 feet of timber delivered on mill yard at $4.25, per thousand feet, $722.50. To 100,000 feet of timber, cut, hauled and ready for delivery on skid-ways and mill yard at $4.00 per thousand, $400.00. To damages for not being permitted to deliver 500,000 feet of timber @ $1.00 per thousand, being the profit under said contract to plaintiff, $500.00. Total $1622.50. Defendants filed a bill of off-sets aggregating $2,-460.00, made up of two items of money paid of $300.00, and $240.00, respectively; $60.00 account of Sanders Bros., and sundry other charges for damages, growing out of said logging contract.

On the trial the parties substantially agreed upon the terms of their contract, the amount of logs actually gotten out by plaintiff for defendants under their contract, and delivered or partially delivered, and the amount of money paid him on account for the timber actually delivered. The real conflict in the evidence related to whether plaintiff, at the time of the shutting down of defendants' mill, had agreed thereto, and had agreed to release them from liability, and whether he had afterwards refused to complete his logging contract to log their mill when requested to do so by defendants. Numerous witnesses were examined on both sides, and on their evidence the jury found for plaintiff the sum of $509.54, on which verdict, overruling defendants' motion for a new trial, the court below pronounced the judgment complained of, that plaintiff recover of defendants the sum so found by the jury with costs according to law.

We are asked to reverse this judgment and say that the evidence, though conflicting, was so preponderating in favor of

defendants on all points as to entitle them to a new trial. This we can not do. We think it quite evident the jury did not allow plaintiff anything by way of damages on account of shutting down defendants' mill, or stopping him from cutting and delivering the 500,000 feet of timber remaining on the stump; and that the amount of their verdict was for timber actually delivered at the mill, and other timber cut and delivered either on the skid-ways or on the so-called "hitch grounds", near the mill yard, and for which work concededly plaintiff had never been paid, defendants' claim being that under the contract he was not to be paid until the timber was actually delivered on the skid-ways and sawed, and according to the mill measurement. We can not say that the evidence on which the jury found their verdict preponderated in favor of defendants, justifying a new trial. We must therefore on rules too familiar to be repeated affirm the judgment below, and such will be the judgment here.

*Affirmed.*

ROBINSON, PRESIDENT, *(dissenting):*

The syllabus does not meet my approval. It goes too far and allows the appellate court to set aside a verdict based wholly on conflicting oral testimony of witnesses, given in the presence of the jury, on the ground that the jury has been controlled by passion, bias, undue influence, and the like. How can we say that a jury has been so controlled when we do not know what credibility they have given to the personal witnesses before them? They may believe one witness and decline to believe any number of others. That may look like passion, bias, or undue influence from the printed page that comes to us, but the consideration which the jury may have given to the credibility of the witnesses from the very presence of those witnesses may acquit the jury of any such charge. We cannot know what was the consideration of the jury in this particular. It may offset all imputations of error on their part. If we were to hear the witnesses testify as did the jury, we might take the very view of the weight of the testimony that they did. The court cannot legally invade the province of the jury. They are the sole judges as to the credibility of the witnesses who personally testify before them *Coalmer* v. *Barrett,* 61 W. Va. 237, and other cases.